UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| Michelle K.[1], | ) |
|        Plaintiff, | ) |
| v. | ) Case No. 3:20-cv-128 |
| ANDREW M. SAUL, Commissioner of Social Security, | ) |
|        Defendant. | ) |

**REPORT AND RECOMMENDATION**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, Michelle K., on February 7, 2020. For the following reasons, the Court **RECCOMENDS** that the decision of the Commissioner be **REMANDED.**

*Background*

The plaintiff, Michelle K., filed an application for Disability Insurance Benefits on November 16, 2016, alleging a disability onset date of October 22, 2015. (Tr. 12). The Disability Determination Bureau initially denied Michelle K.'s application on May 24, 2017, and again upon reconsideration on September 1, 2017. (Tr. 12). Michelle K. subsequently filed a timely request for a hearing on November 14, 2017. (Tr. 12). A hearing was held on November 8, 2018, before Administrative Law Judge (ALJ) Jeanette Schrand, and the ALJ issued an unfavorable decision on February 11, 2019. (Tr. 12-23). Vocational Expert (VE) Kathleen L. Reis appeared at the hearing. (Tr. 30). The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3).

First, the ALJ noted that Michelle K. met the insured status requirements of the Social

---

[1] To protect privacy, the plaintiff's full name will not be used in this Order.

Security Act through June 30, 2021. (Tr. 14). At step one of the five-step sequential analysis for determining whether an individual is disabled, the ALJ found that Michelle K. had not engaged in substantial gainful activity since October 22, 2015, her alleged onset date. (Tr. 14).

At step two, the ALJ determined that Michelle K. had the following severe impairments: prolapse bladder status-post surgery and revision (bladder disorder); panic disorder; anxiety; depressive/bipolar disorder (affective disorder); and bilateral carpal tunnel syndrome (CTS). (Tr. 14). The ALJ found that the above medically determinable impairments significantly limited Michelle K.'s ability to perform basic work activities. (Tr. 14). Michelle K. also alleged a disability due to hyperlipidemia, skin neoplasm, headaches, history of cocaine and alcohol addiction, and ADHD. (Tr. 14-15). However, the ALJ indicated that her hyperlipidemia, skin neoplasm, headaches, and history of cocaine and alcohol addiction caused no more than a minimal limitation on her ability to engage in basic work activities. (Tr. 14-15). Therefore, the ALJ considered those impairments as non-severe. (Tr. 14-15). The ALJ also found that her ADHD was a nonmedically determinable impairment because the record did not contain any medically acceptable clinical and laboratory diagnostic techniques that would support an actual diagnosis. (Tr. 15).

At step three, the ALJ concluded that Michelle K. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 15). The ALJ found that no medical evidence indicated diagnostic findings that satisfied any listed impairment. (Tr. 15).

After consideration of the entire record, the ALJ then assessed Michelle K.'s residual functional capacity (RFC) as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant is

> limited to no more than frequent handling (gross manipulation) with the bilateral upper extremities; the claimant is limited to no more than frequent fingering (fine manipulation of items no smaller than a paper clip) with bilateral hands; the claimant is limited to simple and routine tasks in a low stress job (defined as not requiring the worker to cope with work-related circumstances that could be dangerous to the worker or others); the claimant is limited to a work environment free of fast paced or piece rate production work; the claimant is limited to no more than occasional simple workplace changes; the claimant is limited to occasional interaction with the public and coworkers, and no tandem tasks or teamwork where one production step is dependent on the prior step.

(Tr. 16). The ALJ explained that in considering Michelle K.'s symptoms she followed a two-step process. (Tr. 17). First, she determined whether there was an underlying physical or mental impairment that was shown by a medically acceptable clinical or laboratory diagnostic technique that reasonably could be expected to produce Michelle K.'s pain or other symptoms. (Tr. 17). Then she evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited Michelle K.'s functioning. (Tr. 17).

After considering the evidence, the ALJ found that Michelle K.'s medically determinable impairments reasonably could be expected to produce her alleged symptoms. (Tr. 17). However, the ALJ found that Michelle K.'s statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 17). The ALJ assigned significant weight to the state agency medical consultants in making her decision. (Tr. 19).

At step four, the ALJ found that there was not enough evidence related to Michelle K.'s past relevant work to make a step four finding regarding her ability to perform past work. (Tr. 20). However, the ALJ found jobs that existed in significant numbers in the national economy that she could perform. (Tr. 21). Therefore, the ALJ found that Michelle K. had not been under a disability, as defined in the Social Security Act, from October 22, 2015 through the date of her

decision. (Tr. 22).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); **Moore v. Colvin**, 743 F.3d 1118, 1120–21 (7th Cir. 2014); **Bates v. Colvin**, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence."). Courts have defined substantial evidence as "such relevant evidence as a reasonable mind might accept to support such a conclusion." **Richardson v. Perales**, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting **Consol. Edison Co. v. NLRB**, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see* **Bates**, 736 F.3d at 1098. A court must affirm an ALJ's decision if the ALJ supported her findings with substantial evidence and if there have been no errors of law. **Roddy v. Astrue**, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." **Lopez ex rel Lopez v. Barnhart**, 336 F.3d 535, 539 (7th Cir. 2003).

Disability insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to

be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. § 404.1520**. The ALJ first considers whether the claimant is presently employed and "doing . . . substantial gainful activity." **20 C.F.R. § 404.1520(b)**. If she is, the claimant is not disabled, and the evaluation process is over. If she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. § 404.1520(c)**; *see* **Williams v. Colvin**, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of her past work. If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled. **20 C.F.R. § 404.1520(e)**. However, if the claimant shows that her impairment is so severe that she is unable to engage in her past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of her age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f);** *see* **Biestek v. Berryhill,** 139 S. Ct. 1148 (2019) (upon the disability benefits applicant's request, the vocational expert's refusal to provide the private market-survey data underlying her opinion regarding job availability did not categorically preclude the expert's testimony from counting as "substantial evidence" but, instead, the inquiry must be case-by-case).

Michelle K. has requested that the court remand this matter for additional proceedings. In her appeal, Michelle K. has argued that the ALJ's RFC was not based upon substantial evidence.

Michelle K. contends that the ALJ improperly considered her subjective symptoms, specifically regarding her bladder disorder. An ALJ's evaluation of subjective symptoms will be upheld unless it is patently wrong. **Shideler v. Astrue**, 688 F.3d 306, 310-11 (7th Cir. 2012). Nevertheless, an ALJ must support her evaluation with specific reasons that are supported by the record. **Pepper v. Colvin**, 712 F.3d 351, 367 (7th Cir. 2013). Under SSR 16-3p, 2016 SSR LEXIS 4, an ALJ must assess the claimant's subjective symptoms rather than assessing her "credibility." SSR 16-3p, 2016 SSR LEXIS 4, 2016 WL 1119029, at *1 (Mar. 16, 2016).

The ALJ first must determine whether the claimant has a medically determinable impairment that reasonably could be expected to produce her symptoms. SSR 16-3p, 2016 SSR LEXIS 4, 2016 WL 1119029, at *2. Then, the ALJ must evaluate the "intensity, persistence, and functionally limiting effects of the individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities." SSR 16-3p, 2016 SSR LEXIS 4, 2016 WL 119029, at *2. An individual's statements about the intensity and persistence of the pain may not be disregarded because they are not substantiated by objective medical evidence. SSR 16-3p, 2016 SSR LEXIS 4, 2016 WL 1119029, at *5. In determining the ability of the claimant to perform work-related activities, the ALJ must consider the entire case record, and the decision must contain specific reasons for the finding. SSR 16-3p, 2016 SSR LEXIS 4, 2016 WL 1119029, at *4, 9. The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(i)     The individual's daily activities;

>   (ii)    Location, duration, frequency, and intensity of pain or other symptoms;
>
>   (iii)   Precipitating and aggravating factors;
>
>   (iv)    Type, dosage, effectiveness, and side effects of any medication;
>
>   (v)     Treatment, other than medication, for relief of pain or other symptoms;
>
>   (vi)    Other measures taken to relieve pain or other symptoms;
>
>   (vii)   Other factors concerning functional limitations due to pain or other symptoms.

*See* **20 C.F.R. § 404.1529(c)(3)**.

The ALJ found that Michelle K.'s impairments reasonably could be expected to cause her alleged symptoms but that her statements concerning her symptoms were not entirely consistent with the evidence in the record. (Tr. 17). Michelle K. asserts that "not entirely consistent" is not the legal standard; rather, the ALJ must use the "reasonable" standard described in the regulations. (citing **20 C.F.R. § 404.901; 20 C.F.R. § 404.953(a)**). However, under SSR 16-3p, 2016 SSR LEXIS 4, the ALJ must "evaluate whether the statements are consistent with objective medical evidence and other evidence." SSR 16-3p, 2016 SSR LEXSI 4, at *15, 2016 WL 1119029, at *8, *see also* **20 C.V.R. §§ 416.929(a)**. Therefore, the use of the boilerplate phrase "not entirely consistent" is not, alone, a basis for remand. *See* **Robert v. Berryhill**, 2018 U.S. Dist. LEXIS 162365, 2018 WL 4565385, at *7-8 (C.D. Ill. Sept. 24, 2018); *see also* **Parker v. Astrue**, 597 F.3d 920 (7th Cir. 2010). The court will look to the totality of the ALJ's discussion of a claimant's subjective symptoms.

The ALJ provided a lengthy discussion of Michelle K.'s symptoms and her medical record. The ALJ noted that although Michelle K. complained of urinary frequency and incontinence, her clinical records showed "more or less normal" abdominal exams and that she was exercising daily in November 2017. (Tr. 18). Michelle K. asserts that the ALJ erred in

7

ignoring her need to self-catheterize when discussing her complaints of urinary incontinence and frequency. Michelle K. testified that in order to urinate, she had to "use a potty chair like a child because [her] knees have to be elevated higher than [her] waist," and if that fails, that she has to catheterize herself. (Tr. 54). She further testified that it takes roughly twelve minutes for her to prep the bathroom for self-catheterization, including disinfecting the toilet and setting up a towel and a mirror. (Tr. 61). If she is unsuccessful, she occasionally will have to give herself an enema in order to properly catheterize herself. (Tr. 54, 62). She testified that she never had catheterized herself in a public bathroom due to cleanliness concerns, and that she did not like to leave her house due to her urinary concerns. (Tr. 63). She also testified that while she occasionally could use the bathroom without the catheter, she used the catheter at least twice a day and usually had to use it in the mid-morning and mid-afternoon. (Tr. 64). The medical record supports her testimony. (Tr. 97, 356, 358, 369, 375, 384, 524, 632-33, 686, 702, 705).

An ALJ must "articulate at some minimal level her analysis of the evidence" and may not "ignore an entire line of evidence that is contrary to [her] findings." ***Zurawski v. Halter***, 245 F.3d 881, 887 (7th Cir. 2001); ***Suetkamp v. Saul***, 406 F.Supp.3d 715, 719 (N.D. Ind. Aug. 27, 2019). An ALJ "cannot simply cherry-pick facts surrounding a finding of non-disability while ignoring evidence that points to a disability finding." ***Reinaas v. Saul***, 953 F.3d 461, 466 (7th Cir. 2020) (finding that the claimant cannot "prevail by arguing that the ALJ improperly weighed the evidence" but can prevail if the "ALJ overlooked entire swaths of it"). Therefore, "an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." 406 F.Supp.3d at 719 (citing ***Lopez ex rel. Lopez v. Barnhart***, 336 F.3d 535, 539 (7th Cir. 2003)).

Here the ALJ dismissed Michelle K.'s complaints of urinary frequency and incontinence by stating that her abdominal exams were "more or less normal." (Tr. 18). The ALJ also relied on

a single report from November 2017 where Michelle K. stated she was exercising daily. (Tr. 18). The ALJ ignored evidence of Michelle K.'s need to self-catheterize at least twice daily in addressing her complaints of urinary frequency and incontinence.

As an initial matter, the ALJ cited to pages in the medical record that do not indicate any "more or less normal" abdominal exams. (Tr. 18, 321, 326, 332, 339, 346, 352, 365, 372, 381, 442, 445, 460-62, 468, 475, 494, 722, 732, 734, 754, 807). The only reference to her abdomen noted negative abdominal pain, but that she continued to feel pressure and struggled with urinary incontinence and constipation. (Tr. 18, 321, 326, 332, 339, 346, 352, 365, 372, 381, 442, 445, 460-62, 468, 475, 494, 722, 732, 734, 754, 807). The ALJ cited one record that noted Michelle K. had no urinary frequency or retention, but that was because she had a Foley catheter placed during an ER visit which she was still using at the time of the visit that resulted in the creation of that medical record. (Tr. 377). Other records cited by the ALJ supported Michelle K.'s reports of urinary urgency and incontinence, as well as noted abdominal distention or pressure. (Tr. 324, 329, 336, 343, 349, 356, 358, 362, 375, 384, 760). More problematically, multiple pages cited by the ALJ in an effort to contradict Michelle K.'s complaints of urinary frequency and incontinence actually supported her complaints and noted abdominal pressure or distension. (Tr. 332, 326, 339, 346, 442, 445, 468, 475, 494, 679, 722). The ALJ cherry-picked evidence to support her decision while ignoring the evidence that Michelle K.'s bladder disorder caused urinary urgency, frequency, and incontinence. The ALJ also failed to consider Michelle K.'s need to self-catheterize multiple times a day due to her bladder disorder. This error requires remand.

The ALJ also cited two pages from a November 2017 exam that stated that "the claimant [was] exercising daily." (Tr. 18). This note, however, simply indicated that Michelle K. reported that she exercised "regularly, 4 x week." (Tr. 729). This does not, as the ALJ stated, indicate that

9

she was exercising daily, nor does it indicate the type or duration of the exercise that Michelle K. engaged in. Michelle K.'s ability to exercise for an unknown duration, four times a week, did not indicate that she was not struggling with urinary frequency and incontinence at the same time. The ALJ failed to "build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." ***Beardsley v. Colvin***, 758 F.3d 834, 837 (7th Cir. 2014) (citing ***Blakes v. Barnhart***, 331 F.3d 565, 569 (7th Cir. 2003); ***Zurawski v. Halter***, 245 F.3d 881, 887 (7th Cir. 2001)). The ALJ did not provide any evidence that regular exercising meant that Michelle K.'s reports of urinary frequency or incontinence were either exaggerated or did not require any discussion or limitations in the RFC. Finally, it is unclear how "more or less normal" abdominal exams meant that Michelle K. was not experiencing pelvic problems, as the medical records repeatedly reference her pelvis or pelvic floor when discussing her urinary frequency and incontinence. (Tr. 369, 679, 761). The medical records did not connect abdominal examinations with her urinary incontinence.

The ALJ also seemed to believe that lifting and carrying limitations were enough to address her history of bladder disorder. (Tr. 18). However, lifting and carrying limitations do not logically relate to urinary incontinence, frequency, or the need to self-catheterize. In any event, the ALJ failed to explain how lifting and carrying limitations adequately accounted for Michelle K.'s bladder disorder. There was no logical bridge between Michelle K.'s bladder disorder complaints and her ability to lift and carry.

The Commissioner's only response to this argument is that although the ALJ ignored Michelle K.'s need to self-catheterize, Michelle K. ignored reports that her doctor suggested she self-catheterize in the morning and evening. [DE 17 at 7]; (Tr. 702). The Commissioner asserts that this meant that Michelle K. would not need to self-catheterize during the workday, and

therefore the ALJ did not need to address it. While Michelle K.'s doctors did suggest she self-catheterize in the mornings and evenings at times, the Commissioner once again ignores the multiple reports that indicated she needed to self-catheterize more often. For instance, at one visit she was told to self-catheterize every 4-6 hours. (Tr. 369). Another note discussed her need to self-catheterize every few hours. (Tr. 632-33). Her doctor suggested that she self-catheterize in the morning, evening, *and* "as needed throughout the day." (Tr. 633). Other records repeated this suggestion. (Tr. 686-87, 705). Michelle K. testified at the hearing that she self-catheterized at least twice a day, and that those times were most often mid-morning and mid-afternoon. (Tr. 64). The Commissioner's response does not accurately address the argument. The ALJ's failure to consider Michelle K.'s need to self-catheterize requires remand.

Michelle K. has made other arguments regarding her subjective symptoms and the RFC. However, because the ALJ erred in considering Michelle K.'s subjective symptoms, specifically with regard to her urinary frequency and incontinence, the Court need not address the other arguments at this time. A full analysis of Michelle K.'s bladder disorder symptoms and her need to self-catheterize multiple times a day should alter the RFC. The ALJ will have the opportunity to revisit any other issues on remand.

Based on the foregoing reasons, the court **RECCOMENDS** that the decision of the Commissioner be **REMANDED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties shall have fourteen days after being served with a copy of this Recommendation to file written objections thereto with the Clerk of Court. The failure to file a timely objection will result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. ***Willis v. Caterpillar, Incorporated***, 199 F.3d 902, 904 (7th Cir. 1999); ***Johnson v. Zema Systems Corporation***, 170

F.3d 734, 739 (7th Cir. 1999); ***Hunger v. Leininger***, 15 F.3d 664, 668 (7th Cir. 1994); ***The Provident Bank v. Manor Steel Corporation***, 882 F.2d 258, 260-61 (7th Cir. 1989); ***United States v. Johnson***, 859 F.2d 1289, 1294 (7th Cir. 1988); ***Lebovitz v. Miller***, 856 F.2d 902, 905 n.2 (7th Cir. 1988).

ENTERED this 14th day of June 2021.

/s/ Andrew P. Rodovich
United States Magistrate Judge